**SIGNED this 17 day of July, 2023.**



James P. Smith
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Two Rivers Irrevocable Trust, | ) | Case No. 23-30147-JPS |
| | ) | |
| Debtor. | ) | Involuntary Chapter 7 |
| | ) | |

BEFORE

James P. Smith

United States Bankruptcy Judge

APPEARANCE:

    For Petitioning Creditors: John T. McGoldrick, Jr.

    Martin Snow, LLP

    P.O. Box 1606

    240 Third Street

    Macon, GA 31202-1606

    478-749-1700

    Email: jtmcgoldrick@martinsnow.com

    James M. Sherman

    Stanley, Esrey & Buckley, LLP

    1230 Peachtree Street NE

    Suite 2400

    Atlanta, GA 30309

    (404) 835-6200

    Email: jsherman@seblaw.com

    For Debtor/Defendant:    Courtney Davis

    Morgan & Morgan Attorneys at Law, P.C.

    1090 C Founders Blvd

    Athens, GA 30606

    706-548-7070

    Fax : 706-613-2089

    Email: courtney@morganlawyers.com

## **MEMORANDUM OPINION**

On June 22, 2023, the Court orally announced its findings of fact and conclusions of law in this case. The Court now memorializes its opinion.

## **PROCEDURAL POSTURE**

Petitioners Cecilia and Barry Rogers and their son Coleman Rogers filed an involuntary petition against Two Rivers Irrevocable Trust (the "Two Rivers Trust"). (Docket No. 1). Two Rivers Trust filed an answer (Docket No. 6) asserting three defenses. First, Two Rivers Trust asserted that it is not a "business trust" and therefore, cannot be a debtor under 11 U.S.C. §§ 101(9), 101(41) and 109(b).[1] Second, Two Rivers Trust denied that it was generally not paying its debts as they come due. Finally, Two Rivers Trust asserted that the Petitioners have adequate remedies under state law and therefore, the petition was filed in bad faith by attempting to use the bankruptcy process for improper purposes. The matter came on for hearing beginning May 31, 2023, and was continued to and concluded on June 12, 2023.

After considering the evidence, the briefs, the legal arguments of counsel, and the law, the Court, pursuant to Federal Rule of Bankruptcy Procedure 52(a)(1), publishes its findings of fact and conclusions of law.

## **FINDINGS OF FACT**

Two Rivers Trust owns approximately 334 acres of land in Greene County, Georgia. Mike McCommons is the sole trustee of the Two Rivers Trust.

Two Rivers Trust was formed January 13, 2012. On that date, Two Rivers Holding Co., Inc.[2] transferred by quit claim deed seven tracts of land to Two Rivers Trust. McCommons, also on January 13, 2012, transferred by quit claim deed three

---

[1] Statutory references herein are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise specified.
[2] Mike McCommons is the sole owner of Two Rivers Holding Co.

tracts to Two Rivers Trust. In total, approximately 334 acres were transferred by quit claim deed on January 13, 2012.

McCommons testified that his son, Steven McCommons, suffered a serious and permanent brain injury in a motorcycle accident. McCommons formed Two Rivers Trust on advice to make long-term plans for Steven. Steven McCommons is the sole beneficiary of Two Rivers Trust.

A motorbike racing facility, known as Durham Town, operates on Two Rivers Trust's property. Durham Town includes additional property leased from family members related to McCommons. Durham Town is comprised of (1) approximately 150 miles of dirt bike trails, (2) a racing course, (3) a drag strip, (4) a restaurant, (5) a pro shop which leases and sells motorcycle racing equipment, (6) cabins, campers, trailers, and recreational vehicles for overnight rental, and (7) hunting land.

Durham Town has been in operation for approximately twenty years. Evidence at the hearing in the form of tax returns, profit and loss statements and testimony established that McCommons had operated Durham Town through numerous entities which he owned, including Georgia Trails and Rentals, Inc., Two Rivers Holding Co Inc., Durham Town Pro Shop, Bevlyn's Kitchen, Inc., Durham Town Off Road Park, Inc., Durham Town Plantation Sportsman's Resort, LLC, and D.T. Farms. Allegedly, one or more of these entities has been leasing from Two Rivers Trust the land on which part of Durham Town is operated. McCommons testified that there were no written leases and that all the leases, including those with his family members on non-Two Rivers Trust property, were "handshake deals." One would assume that one or more of these entities would have been paying rent to Two Rivers Trust for the use of Two Rivers Trust's land and buildings. However, Two Rivers Trust did not have a bank account until June 2020. The documents introduced at trial show that rent was paid to Georgia Trails and

4

Rentals, Inc. and to Two Rivers Holding Co, Inc., even though those entities had no ownership interest in the real property upon which Durham Town operated.

Kimberly Crowley, who did the bookkeeping for the Durham Town entities from 2012 to 2021, testified that she wrote checks to various entities, at various times and in various amounts as directed by McCommons. She testified that Durham Town shut down in 2021. It then reopened, but all fees generated by Durham Town were then paid to various entities created by Tim McCommons, Mike McCommons's brother. Mike McCommons testified that after the Petitioners obtained their judgments, entities owned by Tim McCommons took over the operation of Durham Town, although there was no evidence of any formal transfer of the business from Mike McCommons's entities to Tim McCommons's entities.

Petitioners hold judgments for various amounts against Georgia Trails and Rentals, Inc., Durham Town Plantation Sportsman's Resort, LLC, Two Rivers Holding Company, Inc., Joseph Lassen, McCommons and the Two Rivers Trust recovered in the Superior Court of Greene County, Georgia, Civil Action No. 16-CV-204. The judgments arise from damages incurred by Coleman Rogers. Coleman Rogers was racing at Durham Town when he hit a culvert pipe and catastrophically damaged his right leg. Cecilia and Barry Rogers hold judgment against Two Rivers Trust in the principal amount of $154,198.60. Coleman Rogers holds judgment against Two Rivers Trust in the principal amount of $2,982,000. The judgments have been recorded in Greene County, thus imposing judgment liens on the property of Two Rivers Trust.

## CONCLUSIONS OF LAW

1. *Whether the Trust is a "Business Trust" under the Bankruptcy Code*

The first issue is whether a trust can be a debtor under Chapter 7. "The burden of establishing eligibility in bankruptcy lies with the party filing the

5

bankruptcy petition." *Montgomery v. Ryan (In re Montgomery)*, 37 F.3d 413, 415 (8th Cir. 1994).

Section 303(a) provides that an involuntary case can be commenced only against a "person, except a farmer, family farmer, or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced." 11 U.S.C. § 303(a). "Corporation" is defined under § 101(9)(A)(v) to include a "business trust."[3] "Business trust" is not defined in the Bankruptcy Code. While an abundance of case law from around the country develops the definition of "business trust," neither the Supreme Court of the United States nor the United States Court of Appeals for the Eleventh Circuit have defined the term in the context of the Bankruptcy Code. However, "the one overriding principle that emerges from the cases is that the determination of whether a trust is a business trust is fact-specific and focuses on the purpose and operations of the trust." *See Catholic Sch. Emples. Pension Trust v. Abreu (In re Catholic Sch. Emples. Pension Trust)*, 599 B.R. 634, 662 (B.A.P. 1st Cir. 2019) (quoting *In re Jin Suk Kim Trust*, 464 B.R. 697, 704 (Bankr. D. Md. 2011)).

Thus, while there is no binding precedent, this Court looks to a recent case in which the United States Bankruptcy Court for the District of Colorado establishes the legal meaning of "business trust." *See In re Quadruple D Trust*, 639 B.R. 204 (Bankr. D. Colo. 2022).

In *Quadruple D Trust*, Judge McNamara held that interpreting terminology in the Bankruptcy Code was a matter of federal statutory interpretation and is not governed by federal common law or state law. *Id.* at 219. The court determined

---

[3] One court suggests "Congress included business trusts in the Bankruptcy Code definition of a corporation as a person because of their similarity to corporations." *Mosby v. Boatmen's Bank of St. Louis County (In re Mosby)*, 61 B.R. 636, 638 (E.D. Mo. 1985), *aff'd* 791 F.2d 628 (8th Cir. 1986).

"that the term 'business trust' does not have a plain or ordinary meaning well understood by the American public writ large." *Id.* at 220.

To distill the definition of "business trust," the court looked at pre-Bankruptcy Code case law and found the cases of *Hecht v. Malley*, 265 U.S. 144, 44 S. Ct. 462 (1924), and *Morrissey v. Comm'r of Internal Revenue,* 296 U.S. 344, 56 S. Ct. 289 (1935), were binding precedent. *Quadruple D Trust,* 639 B.R. at 221–23. Beyond pre-Bankruptcy Code case law, the court considered: (1) pre-Bankruptcy Code legal dictionary definitions; (2) usage in pre-Bankruptcy Code articles and other sources; (3) definition under state law; and (4) usage in bankruptcy cases. *Id.* at 224–36. The court concluded the Supreme Court cases of *Hecht* and *Morrissey* were controlling. *Id.* at 231. Relying on *Morrissey*, the court held:

> the "salient features" of a business trust are;
>
> (1) a trust "created and maintained" for a business purpose;
>
> (2) title to property held by trustees;
>
> (3) centralized management;
>
> (4) continuity uninterrupted by death among beneficial owners;
>
> (5) transferability of interests; and
>
> (6) limited liability.

*Id.* at 230 (citing *Morrissey*, 296 U.S. at 357–359, 56 S. Ct. 289).

Applying these factors to the facts at hand, the Court finds Two Rivers Trust is not a "business trust" as used in the Bankruptcy Code. The Court notes that feature one, whether the trust was created and maintained for a business purpose, is dispositive as to whether Two Rivers Trust is a business trust. Because factor one is dispositive, the Court, in its analysis, addresses only factors one, four, and five.

### 1. Created for a Business Purpose

First, the Court must determine whether Two Rivers Trust was created for a business purpose. Here, it was not.

7

Whether a trust is created and maintained for a business purpose is "the most important factor for determining whether a trust is eligible to file for bankruptcy protection as a 'business trust.'" *Id.* at 236 (citing *Morrissey*, 296 U.S. at 359). A court should first inquire into the intention or purpose of the trust at the time of its creation, then if the court finds the trust was created for business purposes, the court should determine whether the trust engaged in business activities. *Id.*

"The trust instrument serves as key evidence of the purpose of any trust at formation." *Id.* at 236; *see also In re St. Augustine Trust*, 109 B.R. 494, 496 (Bankr. M.D. Fla. 1990) ("Of course, any inquiry into the nature of the debtor [ ] and its eligibility for relief under Title 11 must begin with an examination of the trust documents."). After the trust documents, a court should then consider a trust's methods of operations. *In re St. Augustine Trust*, 109 B.R. at 496.

The United States Bankruptcy Court for the Middle District of Florida, in *In re Pace*, analyzed whether a trust was a business trust and thus an eligible debtor. *In re Pace*, 376 B.R. 334, 336 (Bankr. M.D. Fla. 2007). The court examined the trust agreement and considered evidence presented at trial. *Id.* Finding the trust was created for estate and family planning purposes, the court determined the trust was ineligible to proceed as a debtor. *Id.* at 336–37. The court noted that while the trust was created to "hold and conserve property, the trust's purpose was merely to preserve the res and not to conduct business and share gains." *Id.*

Similarly, in *In re Quadruple D Trust*, the court found that, pursuant to the trust agreement, the trust was created as an irrevocable trust for the primary benefit of the family of the settlor. 639 B.R. at 237.

> "This provision confirms that all the beneficiaries of the Trust are family members and suggests that the Trust is a typical family trust, not a "business trust." Notably, the Trust Agreement does not identify the beneficiaries' respective ownership interests in the Trust by percentage,

8

shares, or certificates. The Trust also is a donative trust. *Dille Family Trust*, 598 B.R. 179, 199 (Bankr. W.D. Pa. 2019) ("a traditional trust facilitates a donative transfer, where as a business trust implements a bargained- for- exchange"). Nothing in the Trust Agreement indicates that any of the beneficiaries contributed anything to the trust (i.e., made an investment in the Trust). Instead, the Trust Agreement states: "The Settlor...transfers and delivers to the trustee...the property in schedule and (sic) attached hereto." The beneficiaries did not put their capital at risk.

*Id.* at 237.

The *Quadruple D* court also noted that the trust documents included a spendthrift provision. *Id.* Spendthrift provisions restrict the transfer of a beneficial interest. *See* Restatement (Third) of Trusts § 58(1) (Am. Law Inst. 2003) ("The term "spendthrift trust" refers to a trust that restrains voluntary and involuntary alienation of all or any of the beneficiaries' interests."). "Georgia law provides for enforcement of spendthrift provisions in trusts." *Coleman v. Hainlen (In re Hainlen)*, 365 B.R. 288, 292 (Bankr. S.D. Ga. 2007); O.C.G.A. §§ 53-12-28(a) and (b). Thus, a trust which includes an enforceable spendthrift clause is "powerful evidence that the trust does not have a business purpose." *In re Quadruple D Trust*, 639 B.R. at 237.

Two Rivers Trust shares the same characteristics. Here, the Trust Document (the "Document") (Petitioners' Exhibit 1) explicitly states Two Rivers Trust was created to preserve property for the benefit of McCommons's family. Pursuant to Article 1 of the Document, "The purpose of the creation of this Trust is to benefit the descendants of Mike McCommons. Descendants include Steven McCommons, son of Mike McCommons." Thus, the beneficiaries of the Two Rivers Trust are relatives of McCommons, which indicates Two Rivers Trust is a family trust rather than a business trust.

Further, Article 6 of the Document provides, in part, "Finally, the Grantor's primary purpose is to preserve the property held in trust for the future benefit of

9

the beneficiaries, and to ensure that said property is protected from liquidation by poor decisions of the youthful beneficiaries." This is consistent with the testimony of Mike McCommons, who testified that he created the trust to protect the property from poor decisions by his son, Steven.

Likewise, Two Rivers Trust includes a spendthrift clause. (*See* Petitioners' Exhibit 1, Article 4 (f)). The *Quadruple D* court noted that: "[E]very case that has involved a restriction on the transferability of the beneficiaries' interest, whether a nominee trust or not, has held the trust did not qualify as a [bankruptcy] debtor." *In re Quadruple D Trust*, 639 B.R. at 238–39 (citing *In re Woodsville Realty Tr.*, 120 B.R. 2, 6 (Bankr. D.N.H. 1990) (alteration in original)).

Thus, similar to the trusts in *Pace* and in *Quadruple D Trust*, Two Rivers Trust was created to hold property for estate and family planning purposes. Both the Document and the testimony of Mike McCommons indicate the purpose of Two Rivers Trust was to "preserve the res and not to conduct business and share gains." *In re Pace*, 376 B.R. at 336.

Although the Court finds Two Rivers Trust was not created for a business purpose, the Court considers whether the Two Rivers Trust was maintained for a business purpose.

### 2. Maintained for a Business Purpose

"The second inquiry is whether the [t]rust actually engaged in business activities." *In re Quadruple D Trust*, 639 B.R. at 238. "Commercial or business activities" appears in, but is nowhere defined, in the Bankruptcy Code. *See* 11 U.S.C. §§ 101(51D), 1182(1)(A). At least one court has construed "commercial or business activities" to mean "private sector actions related to buying, selling, financing, or using goods, property, or services, undertaken for the purpose of earning income (including by establishing, managing, or operating an incorporated or unincorporated entity to do so." *In re Ikalowych*, 629 B.R. 261, 276 (Bankr. D.

10

Colo. 2021). The court in *Quadruple D Trust* relies on this definition, so this Court likewise applies it. *See In re Quadruple D Trust*, 639 B.R. at 238.

The evidence establishes that Two Rivers Trust has simply existed since its inception. Although it supposedly leased land and recreational vehicles to the various entities operating Durham Town, Two Rivers Trust received no rent until 2020. The Two Rivers Trust had no bank account until June 2020. Further, Two Rivers Trust used the bank account for just over one year. Two Rivers Trust stopped using the bank account sometime after July 2021, when Petitioners garnished the account. (*See* Petitioners' Exhibits 6, 7 and 8).

Although Two Rivers Trust's 2020 federal income tax return states on Schedule C that it is a "Management Company," none of the expenses shown are related to the operation of any business. (*See* Petitioners' Exhibit 9). Nor does Two Rivers Trust's 2021 profit and loss statement show any kind of business expenses. (*See* Petitioners' Exhibit 18). Rather, the expenses are consistent with passive leasing of land, and the same can be said of the rental income shown. (*See also* 2021 Bank South Register, Petitioners' Exhibit 29).

Two Rivers Trust filed no tax returns until 2020. Although there was testimony that a return was filed in 2021, that return was not introduced into evidence. Further, Two Rivers Trust did not obtain an Employer Identification Number until June 2020. McCommons, in his uncontroverted testimony, stated that none of the contracts with vendors who supplied goods and services to Durham Town were in Two Rivers Trust's name. None of the fees or income generated by the Durham Town operations were paid to Two Rivers Trust. Rather, they were paid to McCommons's various corporate entities such as Georgia Trails and Rentals. There is no evidence that Two Rivers Trust paid any of the bills associated with the operation of Durham Town. McCommons operated Durham Town through his many

corporations. Although McCommons is Two Rivers Trust's sole trustee, there is no evidence that he was operating Durham Town in his capacity as trustee.

As in the case at bar, the court, in *Quadruple D Trust* noted that the trust had "no officers, directors, managers or employees." *Id.* at 238. And, as in the case at bar, the trust in *Quadruple D* had almost no income since its creation. Because "a 'business trust' is supposed to 'provide a medium for the conduct of a business and sharing its gains,' the lack of any attempt to earn income and realize gains suggests that the trust is not a 'business trust.'" *Id.* at 238 (citing *Morrissey*, 296 U.S. at 357, 56 S. Ct. 289).

As in our case, the trust in *Quadruple D Trust* rarely filed tax returns. The court in *Quadruple D Trust* explained that because the trust failed to file its federal tax returns, the court "infer[red] that the [t]rust had no income over such period." *In re Quadruple D Trust*, 639 B.R. at 210. Here, the Court finds Two Rivers Trust's failure to file federal income tax returns supports the proposition that it earned no income.

In conclusion, Two Rivers Trust was not created or maintained for a business purpose. While this feature alone is dispositive, the Court also notes that Two Rivers Trust terminates upon the death of its beneficiaries[4] and, as explained above, the beneficiaries of Two Rivers Trust cannot transfer their interests.[5] (Petitioners' Exhibit 1).

This Court concludes that Two Rivers Trust is not a "business trust" as that term is used in the Bankruptcy Code. "A non-business trust is not eligible to be a debtor under chapter 7." *In re Darren Buckner Living Trust*, Case No. 12-70036-

---

[4] Article 3(l) of the Document establishes that upon death of all its beneficiaries, Two Rivers Trust terminates, and Two Rivers Trust property is to be distributed according to the laws of descent and distribution of the state of Georgia (*See* Petitioners' Exhibit 1). *Morrissey* instructs that this factor indicates that Two Rivers Trust is not a business trust. *See Morrissey*, 296 U.S. at 357, 56 S. Ct. 289.
[5] Article 4(f) of the Document includes a spendthrift provision, which restricts transferability of interests. *See* Petitioners' Exhibit 1.

MHM, 2012 Bankr. LEXIS 5050, *1 (Bankr. N.D. Ga. Oct. 5, 2012). Accordingly, the case must be dismissed.[6]

2. *Whether the Two Rivers Trust is Generally Paying Debts as they Become Due*

Two Rivers Trust argues that it is generally paying its debts as they become due. Per § 303(h)(1), a court shall order relief against an alleged debtor in an involuntary bankruptcy case only where the debtor is generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute as to liability or amount.[7] 11 U.S.C. § 303(h)(1).

To determine whether a debtor is generally not paying its debts as they come due, courts consider a number of factors:
> including (1) the number of debts; (2) the amount of delinquency; (3) the materiality of nonpayment; (4) the nature of the debtor's conduct in its financial affairs; (5) the timeliness of payments on past due obligations; (6) the amount of debts long overdue; (7) the length of time during which the debtor has been unable to meet large debts; (8) any reduction in the debtor's assets; (9) the debtor's deficit financial situation.

*In re Spivey*, No. 10-50340, 2010 WL 5476754, *1. (Bankr. S.D. Ga. December 17, 2010).

Here, Two Rivers Trust has few debts. The 2021 and 2022 Greene County property taxes have not been paid. Some of the property of Two Rivers Trust has been pledged to secure McCommons's loans with Chase and Wells Fargo and those debts are now in default. Debra White holds a judgment against Two Rivers Trust in the amount of $22,000,000 arising from her husband's death. Mrs. White's husband was killed by a falling tree on Two Rivers Trust's property.[8] Petitioners'

---

[6] While this conclusion would normally end the Court's inquiry, the Court will nevertheless address the remaining issues asserted by the Two Rivers Trust.

[7] Section 303(h)(2) offers an alternative, if within 120 days before the filing of the involuntary bankruptcy petition, a custodian was appointed or took possession. 11 U.S.C. § 303(h)(2).

[8] The judgment held by Mrs. White is under appeal and is not being paid.

hold judgments against Two Rivers Trust arising from injuries sustained by petitioner Coleman Rogers.

Petitioners' judgments are not being paid. McCommons testified that Two Rivers Trust's legal fees in this case are being paid by his brother Tim.

Accordingly, there is simply no escaping the conclusion that Two Rivers Trust is generally not paying its debts as they come due and an order for relief would otherwise be appropriate under § 303(h)(1).

3. *Whether the Petition is an Abuse of the Bankruptcy Forum*

Two Rivers Trust argues that filing the petition is an abuse of the bankruptcy forum. Petitioners respond that (1) they are not a single creditor but are separate creditors and (2) that the interests of creditors and the debtor would not be better served by dismissal or abstention. In *General Trading, Inc. v Yale Materials Handling Corp.*, the Eleventh Circuit recognized that there were three approaches for determining bad faith. 119 F.3d 1485 (11th Cir. 1997). The Court stated:

> Because "bad faith" is not defined in the bankruptcy code, and because there is no legislative history addressing the intended meaning of this language, courts have used different approaches to determine whether a petition was filed in bad faith. Some courts have established an "improper purpose test," under which bad faith exists where the filing of the petition was motivated by ill will, malice or the purpose of embarrassing or harassing the debtor. *In re Camelot*, 25 B.R. 861, 864 (Bankr. E.D. Tenn. 1982) (bad faith where motivation for filing involuntary petition was to "spitefully forestall the dissolution of the debtor corporation" and to frustrate the results of a state court proceeding); *see In re Better Care, Ltd.*, 97 B.R. 405, 410 (Bankr. N.D. Ill. 1989).
>
> A second line of authority applies what is known as an "improper use" test, where bad faith exists "when a creditor's actions amount to an improper use of the Bankruptcy Code as a substitute for customary collection procedures." *In re Better Care, Ltd.*, 97 B.R. at 410. An improper use includes instances where "a creditor uses an involuntary bankruptcy to obtain a disproportionate advantage to that particular

creditor's position, rather than to protect against other creditors obtaining such a disproportionate advantage." *Id.* at 411.

> The third line of authority analyzes the bad faith issue by reference to Bankruptcy Rule 9011, which is patterned after Fed. R. Civ. P. 11. An analysis under Rule 9011 inquires into "a significant objective requirement bearing on the legal justification of a claim or defense: a reasonable inquiry into the facts and the law." *In re Turner*, 80 B.R. 618, 623 (Bankr. D. Mass. 1987). In addition to requiring an objective inquiry, Rule 9011 requires a subjective inquiry as well: the bankruptcy proceeding cannot have been interposed for an improper purpose, "such as to harass, to cause delay, or to increase the cost of litigation." Rule 9011.

*Id.* at 1501–02. In that case, the court said that it did not need to decide which approach was correct because under any of the test, the trial court was clearly erroneous in finding bad faith. *Id.* at 1505.

Here, the Court concludes that the improper use test should be applied. Thus, the Court concludes that a bankruptcy case would serve no purpose that creditors of Two Rivers Trust could not otherwise achieve under state law.

Greene County holds a lien for unpaid property taxes. However, they are fully protected by their property tax liens, which are first priority liens under state law. O.C.G.A. § 48-2-56(b). Chase and Wells Fargo hold first mortgages on three of Two Rivers Trust's parcels securing mortgage debts by McCommons of approximately $316,600 principal. (*See* Petitioners' Exhibits 30–32). Accordingly, they can protect themselves by foreclosure.[9]

Additionally, the Petitioners hold judgment liens on Two Rivers Trust's property. They can exercise their collection rights under state law. Likewise, Mrs. White, if her judgement is affirmed, will also have collection rights under state law.

---

[9] Because the mortgages secure notes by McCommons which Two Rivers Trust did not guarantee, neither Chase nor Wells Fargo would have a remaining claim against Two Rivers Trust if the mortgaged properties do not generate enough money at the foreclosure to pay the debts in full.

15

Petitioners argue that if Coleman Rogers is forced to pursue a sheriff's sale on his judgment and he:

> is the highest and best bidder at the sale and obtains title to the property he takes it subject to the claims of those persons currently living on the property, he will be surrounded by lands owned by the cousins of Mike McCommons which have been part of the operations of Durham Town, and he will have an obligation to exclude from the property the many participants who have been operating vehicles on the property or risk incurring the same liability as that has been incurred by Two Rivers for accidents occurring on the property.

(Docket No. 18, p. 3).

But those exact same reasons lead this Court to conclude that a trustee appointed in this case after an entry for an order for relief would immediately abandon the property under § 554(a) as property "that is burdensome to the estate or that is of inconsequential value and benefit to the estate," thus putting the Petitioners in the same position they faced prior to the filing of this case.

Petitioners argue that the property has insufficient value to cover the judgement liens and that after a sheriff's sale, they will have significant unsecured claims. Petitioners argue that by failing to have rent from Durham Town paid to Two Rivers Trust there have been massive fraudulent conveyances that a trustee could pursue to apply to their unsecured claims and to the claim of Mrs. White, if affirmed. However, under O.C.G.A. § 18-2-70 et seq., Petitioners and Mrs. White have the same rights to avoid fraudulent transfers as a trustee under § 544.

In summary, nothing can be accomplished in a bankruptcy case that Two Rivers Trust's creditors cannot achieve under state law. Accordingly, the Court finds that the petition has been filed in bad faith solely for collection purposes and that the petition should be dismissed.

A separate order consistent with this opinion will be entered.

[END OF DOCUMENT]